UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
THOMAS GESUALDI, LOUIS BISIGNANO, :
DARIN JEFFERS, MICHAEL O'TOOLE, :
MICHAEL BOURGAL, FRANK H. FINKEL, :
JOSEPH A. FERRARA, SR., MARC HERBST, : **REPORT AND**
DENISE RICHARDSON, and THOMAS : **RECOMMENDATION**
CORBETT as Trustees and fiduciaries of the Local :
282 Welfare Trust Fund, the Local 282 Pension : 19-CV-4183 (KAM) (PK)
Trust Fund, the Local 282 Annuity Trust Fund, the :
Local 282 Job Training Trust Fund, and the Local :
282 Vacation and Sick Leave Trust Fund, :
  :
                                Plaintiffs, :
  :
                    -against- :
  :
BEDFORD CONTAINER SERVICES, INC., :
  :
                                Defendant. :
----------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Thomas Gesualdi, Louis Bisignano, Darin Jeffers, Michael O'Toole, Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson[1], and Thomas Corbett (collectively, "Trustees" or "Plaintiffs"), as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, "Funds") brought this action against Bedford Container Services, Inc. ("Defendant") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, *et seq.*, seeking to recover unpaid contributions to the Funds, along with interest, liquidated damages and attorneys' fees and costs.  (*See* Compl., Dkt. 1.)

---

[1] After the Complaint was filed, Denise Richardson was replaced by Robert G. Wessels as a Trustee.  (Declaration of Arthur J. Muller in Support of the Motion for Default Judgment ("Muller Decl.") ¶ 1, Dkt. 10.)

1

Before this Court on referral from the Honorable Kiyo A. Matsumoto is Plaintiffs' Motion for Default Judgment (the "Motion"). (*See* Motion, Dkt. 9.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

Plaintiffs are trustees and fiduciaries of the Funds, which are jointly administered by a Board of Trustees comprised of equal numbers of labor and management members in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). (Compl. ¶ 5.) The Funds are "employee benefit plans" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) and "multiemployer plans" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (*Id.* ¶ 4.) The Building Material Teamsters Local 282 (the "Union") is a "labor organization" under ERISA. 29 U.S.C. § 152(5). (*See id.* ¶ 6.)

Pursuant to a Memorandum of Agreement signed August 20, 2018, Defendant entered into a collective bargaining agreement for the period of July 1, 2015 through June 30, 2019 with the Union, agreeing to the terms and conditions of the Demolition, Debris, Asbestos Removal and Toxic Waste Removal Contract 2011-2015 ("Collective Bargaining Agreement" or "CBA") between the Trucking and Demolition Association, on behalf of its members, and the Union.[2] (Ex. 2 to Declaration of Joseph Puccio in Support of the Motion ("Puccio Decl."), Memorandum of Agreement, Dkt. 11-2; Ex. 3 to Puccio Decl., Collective Bargaining Agreement, Dkt. 11-3.)

The CBA requires Defendant, as an employer, to pay certain contributions to the Funds, based on the number of hours worked by its Union employees each month, due by the 30th of each month. (*See* CBA §§ 14(A)-(F).) The CBA incorporates the terms and conditions of the Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement"), which requires the submission of detailed written reports with each monthly payment. (Ex. 1 to Puccio Decl., Trust

---

[2] Some differences in those terms and conditions are not pertinent to this Motion.

2

Agreement, Art. IX, § 1(c), Dkt. 11-1; CBA § 14(G).) If no report is submitted and there are no previous reports on which to base calculations of missing contributions, the employer is deemed to have the number of employees that the Union reports, and each employee is deemed to have worked 40 hours per week for the entire unreported period. (Trust Agreement, Art. IX, § 1(e).) The Trust Agreement also obliges an employer to continue making timely contributions to the Funds as set forth in the most recent collective bargaining agreement to which the employer is a party, unless the employer, at least 60 days prior to the expiration date of the collective bargaining agreement, notifies the Trustees in writing that it does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the collective bargaining agreement expires ("60-Day Notice").[3] (*Id.* § 1(a).)

In the event that the employer fails to remit contributions within five days after the due date, it is liable to the Funds for: (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the date when payment was due to the date when payment was made[4]; (iii) additional damages in an amount equal to the greater of: (a) interest on the unpaid contributions, or (b) liquidated damages in the form of 20 percent of the unpaid contributions; and (iv) the Funds' attorneys' fees and auditors' fees. (*Id.* Art. IX, § 3.) The Trust Agreement also authorizes the Trustees to bring legal proceedings to enforce an employer's obligations to the Funds under the Trust Agreement or the CBA. (*Id.* Art. IX, § 4.)

Beginning with the period ending September 2018, Defendant's reports and contributions were due; however, Defendant failed to submit any remittance reports or contributions. (Compl. ¶ 27; Puccio Decl. ¶ 26; Pls.' Memorandum of Law in Support of the Motion ("Memo of Law") at 2, Dkt. 12.) On March 28, 2019, the Funds sent Defendant a letter demanding submission of

---

[3] The employer could also be relieved of this obligation if it signs or authorizes an industry association to sign a current collective bargaining or participation agreement on its behalf. (Trust Agreement Art. IX, § 1(a).))
[4] See Trust Agreement at Amendment Number 1, dated April 30, 2013.

3

remittance reports and contributions for the months from September 2018 to January 2019. (Compl. ¶ 28; Ex. 5 to Puccio Decl., Demand Letter, Dkt. 11-5; *see also* CBA § 14(G).) As of January 17, 2020, Defendant had not submitted any remittance reports or contributions for the period beginning September 2018. (Puccio Decl. ¶ 22.) The Funds also did not receive a 60-Day Notice from Defendant. (*Id.* ¶ 17.)

## PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint on July 19, 2019 (*see* Dkt. 1) and served it on Defendant via the Office of the Secretary of State of New York on August 12, 2019. (Aff. of Service, Dkt. 5.) Defendant did not answer or otherwise respond to the Complaint. On October 4, 2019, Plaintiffs requested a Certificate of Default (Dkt. 6), which was entered on October 10, 2019. (Dkt. 7.) Plaintiffs filed the Motion and served it on Defendant on January 20, 2020. (Dkt. 9; Aff. of Service, Dkt. 13.)

## DISCUSSION

### I. Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default in the course of litigation. *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Mickalis*, 645 F.3d at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d

4

702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne*, 696 F. Supp. 2d at 208. The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) the plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See GuideOne*, 696 F. Supp. 2d at 208; *see also Mickalis*, 645 F.3d at 129; *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

  II. **Jurisdictional and Procedural Requirements**

    A. <u>Jurisdiction</u>

  The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). The Court may also inquire as to whether it has personal jurisdiction. *See Mickalis*, 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

  Subject matter jurisdiction is found pursuant to Section 301(a) of the LMRA, which states, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988).

5

This Court has personal jurisdiction over Defendant because Defendant is a New York corporation doing business in New York with an office within the Eastern District of New York. (*See* Compl. ¶ 9.) *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.") (alteration in original).

### B. Service

The Summons and Complaint must be properly served on the defaulting party. *See Advanced Cap. Com. Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiffs have made a *prima facie* showing of proper service of the Summons and Complaint on Defendant by filing a process server's Affidavit of Service through the Secretary of State pursuant to § 306 of the New York Business Corporation Law. (Dkt. 5.) *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

### C. Procedural Requirements

Plaintiffs have demonstrated that they have met the procedural requirements for filing a motion for default judgment pursuant to Fed. R. Civ. P. 55 and Local Rule 55.2, including taking the required procedural steps to provide proper notice to Defendant. They requested a Certificate of Default (which was entered by the Clerk of the Court), and they notified Defendant of the status of this action by mailing Defendant the Motion papers. (Dkts. 6, 7, 13.)

### III. Liability

When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiffs. *See Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Plaintiffs seek a default judgment against Defendant for unpaid contributions pursuant to

6

ERISA, 29 U.S.C. § 1145, and violations of the CBA as set forth in the LMRA, 29 U.S.C. § 185. (Compl. ¶¶ 33, 40.)  Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  The LMRA authorizes "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).

Pursuant to Section 502(g)(2) of ERISA, where a "judgment in favor of the plan is awarded" under ERISA Section 515, the Court shall award the plan unpaid contributions, interest on the unpaid contributions, the greater of interest on the unpaid contributions or liquidated damages provided under the plan not exceeding 20% of the unpaid contributions, reasonable attorneys' fees and costs, and other equitable relief the Court deems appropriate.  29 U.S.C. 1132(g)(2); *see Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995); *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 23 (S.D.N.Y. 2019); *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013).  These terms are consistent with those of the Trust Agreement.

Defendant violated the CBA when it failed to pay monthly contributions to the Funds, beginning in September 2018.  (Compl. ¶ 27; Memo of Law at 4.)  Plaintiffs followed the procedural steps required by the CBA to inform Defendant of its delinquency prior to filing the Complaint. (*See* Demand Letter; CBA § 14(G); Memo of Law at 4.)  Defendant has not submitted the required remittance reports or paid contributions since September 2018.  (Compl. ¶ 27.)

Accepting Plaintiffs' allegations in the Complaint as true, as required when considering a motion for default judgment, the undersigned finds that Plaintiffs have adequately established a claim for unpaid contributions pursuant to ERISA, 29 U.S.C. § 1145, and violation of the CBA

pursuant to the LMRA, 29 U.S.C. § 185.

### IV. Damages

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. On a motion for default judgment, plaintiffs bear the burden of presenting proof of damages. *See CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015), *R&R adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015). To reach a conclusion as to damages, the Court relies on documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Pursuant to ERISA Section 502(g), Plaintiffs seek judgment for the amount of unpaid contributions, interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs. They request that the Court compel Defendant to submit the missing remittance reports so the unpaid contributions and interest can be calculated on the basis of those reports, "or in the alternative for Judgment on the amounts due as determined by the estimation formulae in Funds' Trust Agreement." (Memo of Law at 2.)

The undersigned respectfully recommends that damages be awarded based on the Trust Agreement's formula for estimating contributions due, given that Defendant has not submitted remittance reports or responded to the Motion despite being on notice of this action and the Motion for more than a year.

#### A. Unpaid Contributions

Because Defendant failed to submit any remittance reports, there is no "base month" on

which monthly contribution calculations can be based.[5]  In that case, the Trust Agreement deems the employer to have the number of employees that the Union reports in writing, and sets 40 as the number of hours each employee worked per week for the entire unreported period.  (Trust Agreement Art. IX, § 1(e).)

According to Union records dated from December 2018 to June 2019, Defendant had two employees.  (Ex. 6 to Puccio Decl., Shop Steward Reports, Dkt. 11-6.)  Because there were no previous remittance reports, each employee is deemed to have worked 40 hours each week during the unreported period.  (Trust Agreement Art. IX, § 1(e).)   The monthly contribution due to the Funds is calculated based on the hourly rate of contributions to each fund[6] multiplied by 40 hours per week, 4 weeks per month, for two employees, as shown in the chart below.

|  | Welfare Fund $16.85/hr | Annuity Fund $6.29/hr | Pension Fund $8.95/hr | Job Training Fund $0.08/hr | Vacation Fund $2.17/hr | Total Amount Due Each Month |
|---|---|---|---|---|---|---|
| **Amount Due Each Month** | $5,392.00 | $2,012.80 | $2,864.00 | $25.60 | $694.40 | $10,988.80 |

In the Motion, Plaintiffs seek unpaid contributions for the sixteen months from September 2018 through December 2019, totaling $175,820.80. (Puccio Decl. ¶ 30; Memo of Law at 2, 7.) Although the Memorandum of Agreement states that the CBA was in effect only until June 30, 2019, Defendant did not give Plaintiffs its 60-Day Notice, and, therefore, it was obligated to continuing making contributions beyond that date.  (*See* Trust Agreement Art. IX § 1A; Puccio Decl. ¶ 17.)  Accordingly, the undersigned recommends that Plaintiffs be awarded **unpaid contributions in the amount of $175,820.80**.

---

[5] The Trust Agreement permits the Trustees to compute the contributions due by "adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous (12) months or fifty two (52) weeks … for which reports … were submitted by the Employer (hereinafter referred to as the base month)."  (Trust Agreement Art. IX, § 1(e).)
[6]  See Local 282 Demolition, Debris, Asbestos Removal & Toxic Waste Industry Rate Schedule for July 1, 2015 through June 30, 2019.  (Ex. 4 to Puccio Decl. at 2, Dkt. 11-4.)

B. **Interest**

Plaintiffs seek 18 percent annual interest on the unpaid contributions through the date of judgment and provided calculations up to February 29, 2020 in the amount of **$22,440.63**. (Muller Decl. ¶¶ 16-17; Memo of Law at 9.)

Section 502(g)(2) of ERISA states that interest on unpaid contributions "shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). The Trust Agreement sets that rate at 1½ percent per month (18 percent per year) "from the date when payment was due to the date when payment was made." (Trust Agreement Art. IX, § 3, Amendment Number 4; *see* Puccio Decl. ¶ 31.) At a daily interest rate of 0.049315%, the per diem amount of interest due on each monthly contribution amount of $10,988.80 is $5.42. The following chart shows the interest due on each monthly contribution, based on the number of days each payment was late, up to the date of this Report and Recommendation:

| Month Ending | Due Date | Days Late as of August 13, 2020 | Contribution Due | Interest Rate | Per Diem Amount | Interest as of August 13, 2020 |
|---|---|---|---|---|---|---|
| 9/30/2018 | 10/30/2018 | 653 | $10,988.80 | 18.00% | $5.42 | $3,539.26 |
| 10/31/2018 | 11/30/2018 | 622 | $10,988.80 | 18.00% | $5.42 | $3,371.24 |
| 11/30/2018 | 12/30/2018 | 592 | $10,988.80 | 18.00% | $5.42 | $3,208.64 |
| 12/31/2018 | 1/30/2019 | 561 | $10,988.80 | 18.00% | $5.42 | $3,040.62 |
| 1/31/2019 | 3/2/2019 | 530 | $10,988.80 | 18.00% | $5.42 | $2,872.60 |
| 2/28/2019 | 3/30/2019 | 502 | $10,988.80 | 18.00% | $5.42 | $2,720.84 |
| 3/31/2019 | 4/30/2019 | 471 | $10,988.80 | 18.00% | $5.42 | $2,552.82 |
| 4/30/2019 | 5/30/2019 | 441 | $10,988.80 | 18.00% | $5.42 | $2,390.22 |
| 5/31/2019 | 6/30/2019 | 410 | $10,988.80 | 18.00% | $5.42 | $2,222.20 |
| 6/30/2019 | 7/30/2019 | 380 | $10,988.80 | 18.00% | $5.42 | $2,059.60 |
| 7/31/2019 | 8/30/2019 | 349 | $10,988.80 | 18.00% | $5.42 | $1,891.58 |
| 8/31/2019 | 9/30/2019 | 318 | $10,988.80 | 18.00% | $5.42 | $1,723.56 |
| 9/30/2019 | 10/30/2019 | 288 | $10,988.80 | 18.00% | $5.42 | $1,560.96 |

| 10/31/2019 | 11/30/2019 | 257 | $10,988.80 | 18.00% | $5.42 | $1,392.94 |
| --- | --- | --- | --- | --- | --- | --- |
| 11/30/2019 | 12/30/2019 | 227 | $10,988.80 | 18.00% | $5.42 | $1,230.34 |
| 12/31/2019 | 1/30/2019 | 196 | $10,988.80 | 18.00% | $5.42 | $1,062.32 |
| | | **TOTAL INTEREST DUE AS OF AUGUST 13, 2020** | | | | **$36,839.74** |

Plaintiffs seek interest "through the date judgment is entered." (Memo of Law at 9.) Interest will continue to accrue at the rate of $86.71 per day on the 16 unpaid contributions. (*See* Muller Decl. ¶¶ 16-17.) Accordingly, the undersigned recommends that Plaintiffs be awarded interest on the unpaid contributions in the amount of **$36,839.74 to the date of this R&R**, and additional interest that accrues on the 16 unpaid contributions at the per diem rate of **$86.71, from August 14, 2020 through entry of judgment**.

### C. Liquidated Damages

Pursuant to the Trust Agreement, Plaintiffs are entitled to additional damages in an amount equal to the greater of: (a) interest on the unpaid contributions, or (b) liquidated damages in the form of 20 percent of the unpaid contributions. (Trust Agreement Art. IX, § 3.) Interest on the unpaid contributions totals $36,839.74 to date, which is greater than twenty percent of the unpaid contributions of $175,820.80, or $35,164.16.

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded the equivalent of total accumulated interest to the date of judgment as **liquidated damages**.

### D. Attorneys' Fees and Costs

Plaintiffs seek to recover attorneys' fees and costs to date. (Muller Decl. ¶ 19; Puccio Decl. ¶ 31; Compl. at 10.) Attorneys' fees and costs are mandatory under ERISA. *See* 29 U.S.C. § 1132(g)(2)(D); *see also LJC Dismantling Corp.*, 400 F. Supp. 3d at 25. In order to be awarded attorneys' fees, Plaintiffs are required to provide contemporaneous time sheets. *See Lewis v. Coughlin*, 801 F.2d

11

570, 577 (2d Cir. 1986). Plaintiffs have done so. (*See* Ex. 4 to Muller Decl., Dkt. 10-4.)

The attorneys' fees and costs awarded to Plaintiffs by the Court must be "reasonable." *See Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015). "[T]he lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Scharff v. Cty. of Nassau*, No. 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016); *Riley*, 2015 WL 9592518, at *1. To calculate the lodestar, the Court determines a reasonable hourly rate and a reasonable number of hours. "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006). The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates. *See Riley*, 2015 WL 9592518, at *2.

Plaintiffs seek $4,097.00 in attorneys' fees and $703.14 in costs. (Muller Decl. ¶ 21.)

i. **Hourly Rate**

To determine a reasonable hourly rate, the Court considers "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotations omitted). The "community" is the district in which the reviewing court sits. *Scharff*, 2016 WL 3166848, at *4. "The reasonable hourly rate is the rate a paying client would be willing to pay…bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Court must also "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness

12

of attorney's fees in setting a reasonable hourly rate." *Id.* at 190 (emphasis in the original). Those factors include the attorney's experience and expertise. *See Brady*, 455 F. Supp. 2d at 204; *Zhiwen Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). The fee applicant has the burden of justifying the requested rate as reasonable. *See Scharff*, 2016 WL 3166848, at *4.

In recent years, fees in ERISA cases have been awarded in the Eastern District of New York at an hourly rate of $300 to $350 for partners, $200 to $300 for associates, and up to $90 for non-attorney support staff. *See UFCW Local 174 Pension Fund v. 5600 Mkt. Corp.*, No. 17-CV-5789 (CBA)(CLP), 2018 WL 4403394, at *9 (E.D.N.Y. Aug. 16, 2018), *R&R adopted as modified*, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (citing cases); *Universal Elec. Corp.*, 970 F. Supp. 2d at 128-29.

Plaintiffs were represented in this action by attorneys Arthur J. Muller III ("Muller") and Kevin King ("King"). (Muller Decl. ¶ 20.) Muller, an associate, is a 2015 *magna cum laude* graduate of Pace University School of Law with more than four years' experience representing employee benefit plans. (*Id.* ¶ 23.) King is an attorney who has yet to be admitted. (*Id.* ¶ 20.) Michelle Salerno ("Salerno"), a senior paralegal, and Anna Chiarolanza ("Chiarolanza"), a legal secretary, also contributed to the case. (*Id.* ¶¶ 20, n.2, 24.) Salerno has a degree in paralegal studies from St. John's University and has over twenty years' experience in litigation with more than ten in the area of ERISA. (*Id.* ¶ 24.) No information regarding Chiarolanza's experience was provided. Muller billed his time for this matter at a rate of $280 per hour. (*Id.* ¶ 20.) As recently as March 2020, Muller has been awarded the rate of $275 per hour in the Eastern District. *See Gesualdi v. Dove Mason Supply Co., Inc.* No. 19-CV-1181 (RRM) (PK), 2020 WL 1538746, at *6 (E.D.N.Y. Mar. 11, 2020), *R&R adopted sub nom. Gesualdi v. Dove Mason Supply Co., Inc.* No 19-CV-1181 (RRM) (PK), 2020 WL 1536408 (E.D.N.Y. Mar. 30, 2020.) The undersigned finds the rate of $275 per hour for Muller reasonable here. King billed his time for this matter at a rate of $110 per hour. (Muller Decl. ¶ 20.) Law clerks are usually awarded the same hourly rate as paralegals in this District. *See LG Cap. Funding, LLC v.*

*5Barz Int'l, Inc.*, No. 16-CV-2752 (KAM) (JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (collecting cases). In this case, both Salerno and Chiarolanza billed their time at a rate of $110 per hour. (Muller Decl. ¶ 20, n.2.) Salerno has previously been awarded the rate of $110 per hour in this District and the undersigned finds that rate appropriate here. *See Gesualdi v. Scara-Mix, Inc.*, No. 14-CV-0765 (JS) (AKT), 2017 WL 5564673, at *9 (E.D.N.Y. Nov. 17, 2017). The undersigned notes that the rate of $110 per hour is above the rate normally awarded to non-attorney support staff and thus declines to apply this rate to King. The undersigned finds the rate of $85 per hour for King, an unadmitted lawyer, more appropriate in this instance. *See LG Cap. Funding, LLC,* 2019 WL 3082478, at *2 (awarding unadmitted law clerk the rate of $85 per hour). Finally, while no credentials were provided for Chiarolanza, she was previously awarded the rate of $90 per hour in this District and the undersigned finds that appropriate here. *See Scara-Mix, Inc.*, 2017 WL 5564673, at *10.

### ii. Hours Billed

"[T]he district court should exclude excessive, redundant or otherwise unnecessary hours…." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Plaintiffs' counsel spent a total of 23.8 hours on this matter. (Ex. 4 to Muller Decl. at 3.) The undersigned does not find the billed hours to be excessive, redundant, or unnecessary. The undersigned therefore recommends the award of attorneys' fees in the amount of **$3,713.75**.[7]

### iii. Costs

Plaintiffs seek an award of $703.14 in costs. (Ex. 4 to Muller Decl. at 5.) This amount covers the filing fee ($400.00), service of process cost ($295.00), and postage ($8.14). (*Id.*) The undersigned finds the fee for service of process on a single defendant via the New York Secretary of

---

[7] 8.7 hrs. x $275/hr. (Muller); 12.35 hrs. x $85/hr. (King); 1.2 hrs. x $110/hr. (Salerno); 1.55 hrs. x $90/hr. (Chiarolanza)

14

State to be inordinately high.  While Section 502(g)(2)(D) of ERISA provides that costs may be recoverable for bringing an enforcement action, these costs must be "reasonable."  Without support for this high number, the undersigned finds that service of process via the New York Secretary of State should not exceed $100.  Accordingly, the undersigned respectfully recommends that costs for service of process be reduced to $100 and a total amount of **$508.14** in costs be awarded to Plaintiffs.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that the Motion be granted, and that Plaintiffs be awarded damages in the amount of:

(1) Unpaid contributions, consisting of **$175,820.80**;

(2) Interest on unpaid contributions in the amount of **$36,839.74, plus $86.71 per day, from the date of this Report and Recommendation to the date of judgment**;

(3) Liquidated damages in the amount equal to the total interest;

(4) Attorneys' fees of **$3,713.75**; and

(5) Costs of **$508.14**.

Plaintiffs are directed to serve this Report and Recommendation on Defendant forthwith and file proof of service in the docket by **August 18, 2020.**

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         August 13, 2020